AO 106A  (08/18)  Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT

for the

Middle District of Louisiana

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>Information Associated with the Account<br>"coreypowell78@gmail.com" that Is Stored at Premises<br>Controlled by Google, Inc. | )<br>)<br>)<br>)<br>)<br>)<br>)    Case No. 20-mj-29 |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

The account identified by "coreypowell78@gmail.com" which is stored at premises owned, maintained, controlled, or operated by Google, Inc., as further described in Attachment A.

located in the _____ Nothern _____ District of _____ California _____ , there is now concealed *(identify the person or describe the property to be seized)*:

Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

- ☑ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☐ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18:1343; 18:1349 | Conspiracy to Commit Wire Fraud and Wire Fraud |
| 18:642 | Theft of Government Funds |
| 18:1956-1957 | Money Laundering |

The application is based on these facts:

**SEE ATTACHED AFFIDAVIT**

- ☑ Continued on the attached sheet.
- ☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Special Agent Kaitlan Carey, FBI
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
_____ telephone _____ *(specify reliable electronic means)*.

Date: _____ May 27, 2020 _____

_____
*Judge's signature*

City and state: _____ Baton Rouge, Louisiana _____

Honorable Scott D. Johnson
*Printed name and title*

**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| IN THE MATTER OF THE SEARCH OF | : | |
| INFORMATION ASSOCIATED WITH THE | : | MAGISTRATE NO. 20- |
| ACCOUNT "coreypowell78@gmail.com" | : | |
| THAT IS STORED AT PREMISES | : | **UNDER SEAL** |
| CONTROLLED BY GOOGLE, INC. | : | |

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A SEARCH WARRANT**

Your Affiant, Special Agent Kaitlan Carey, being duly sworn, deposes and says as follows:

## I.  INTRODUCTION AND AGENT BACKGROUND

1.     I make this affidavit in support of an application for a search warrant for information associated with the email account "coreypowell78@gmail.com" ("TARGET ACCOUNT") that is stored at premises owned, maintained, controlled, or operated by Google, Inc. ("Google"), an email provider headquartered at 1600 Amphitheatre Parkway, in Mountain View, California. The information to be searched is described in the following paragraphs and in Attachment A, attached hereto and incorporated as if fully set forth herein.  This affidavit is made in support of an application for a search warrant under the Stored Communications Act, 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require Google to disclose to the government copies of the information (including the content of communications) further described in Attachment B, attached hereto and incorporated as if fully set forth herein.  Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

2.     I am a special agent with the Federal Bureau of Investigation ("FBI") assigned to the White Collar squad at the Baton Rouge Field Office since June 11, 2018. Prior to joining the

FBI, I was a prosecutor in Broome County, New York at the Broome County District Attorney's Office. As a prosecutor, I prosecuted a variety of violations, misdemeanors, and felonies. During my tenure as a federal law enforcement officer, I have worked cases with federal, state, and local agencies and have used numerous investigative techniques, including, but not limited to, electronic surveillance, physical surveillance, interviews of witnesses, use of confidential informants, analysis of phone, bank, and other records, and execution of search and seizure warrants.

3.    As a Special Agent with the FBI, I am tasked with investigating violations of federal laws. I have received extensive training related to investigations of Wire Fraud, Business Email Compromise, Money Laundering, Fraud Against the Government, and other White Collar Crimes. In this role, I have participated in the execution of search and seizure warrants in cases involving violations of federal laws, including, but not limited to, Title 18, United States Code, Section 1343 (Wire Fraud), Title 18, United States Code, Section 1349 (Conspiracy to Commit Wire Fraud), Title 18, United States Code, Section 642 (Theft of Government Funds), and Title 18, United States Code, Section 1956-1957 (Money Laundering).

4.    I am personally involved in this investigation along with other federal and state agents. The statements contained in this affidavit are based upon a review of public and private records and interviews conducted by me and other agents of witnesses knowledgeable about the facts underlying this investigation. Because this affidavit is for the limited purpose of establishing probable cause for a search warrant, it does not contain every known fact concerning this investigation, but only those facts that I believe are necessary to establish probable cause.

5.    Based on my training and experience and the facts set forth in this affidavit, there is probable cause to believe that from in or around May 2014, and continuing to on or about May

2016, COREY POWELL ("POWELL"), the person using, receiving, and sending information from the TARGET ACCOUNT, and others, violated Title 18, United States Code, Section 1343 (Wire Fraud), Title 18, United States Code, Section 1349 (Conspiracy to Commit Wire Fraud), Title 18, United States Code, Section 642 (Theft of Government Funds), and Title 18, United States Code, Section 1956 (Money Laundering) (collectively, "TARGET OFFENSES"). There is probable cause to search the information described in Attachment A for evidence, instrumentalities, and fruits of these crimes, as further described in Attachment B.

## II. JURISDICTION

6.      This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711. 18 U.S.C. §§ 2703(a), (b)(1)(A), & (c)(1)(A). Specifically, the Court is "a district court of the United States . . . that has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i). As set forth below, acts in furtherance of these offenses occurred in the Middle District of Louisiana. *See* 18 U.S.C. § 3237(a).

## III. SUMMER FOOD SERVICE PROGRAM

7.      The United States Department of Agriculture ("USDA") offers several nutritional programs for children that are federally-funded and administered by state agencies. These programs, called Child Nutrition Programs ("CNPs"), are administered by the USDA's Food and Nutrition Service. One of these CNPs is the Summer Food Service Program ("SFSP").

8.      The SFSP was established to ensure that children from low-income areas continue to receive nutritious meals during the summer when school is not in session. Organizations or entities participating in the program ("sponsors") provide free meals to children under the age of 18 at approved SFSP sites.

9.      In Louisiana, the SFSP is administered by the Louisiana Department of Education's (LDOE) Division of Nutrition Support, which is located at 1201 North Boulevard in Baton Rouge.  The LDOE provides technical and supervisory assistance to institutions participating in the SFSP.

10.     In order to participate, sponsors are required to submit an online application that includes, among other things, a budget estimating revenues and expenses related to the program. The applications and budgets are evaluated and approved by the LDOE.

11.     Sponsors are also required to submit a site application annually.  The site application(s) must include the physical address(es) where meals will be served.  In the application, sponsors agree to oversee the administration of the SFSP at each approved site.

12.     As part of the SFSP, sponsors must agree to keep accurate records of all meals claimed and to document that all funds were spent only on allowable CNP costs.

13.     Sponsors are reimbursed for expenses after electronically submitting claims to LDOE. To submit a claim, sponsors access the LDOE website using their personalized login information and submit data for their feeding sites, including the number of meals and children served.

14.     When submitting a claim online, sponsors certify that the claim is true and correct, and that the required records are available to support the claim.

15.     All claims submitted to LDOE are processed through LDOE's servers, which are located in Baton Rouge.

16.     When approved, payments are electronically transferred from the state treasury to the bank account specified by the sponsor on the program application.

17.    When enrolling in the SFSP, sponsors must certify that they will comply with all federal and state laws, regulations, and program instructions in implementing the program.

## IV. TARGET OFFENSES

### Wire Fraud

18.    Title 18, United States Code, Section 1343 provides, "Whoever having devised or intending to devise any scheme or artifice—

        a.    to defraud or for obtaining money or property,

        b.    by means of false or fraudulent pretenses, representations, or promises,

        c.    transmits or causes to be transmitted by means of wire, radio, or television communication in interstate commerce, any writings, signs, signals, pictures or sounds,

for the purpose of executing such scheme or artifice shall be fined under this title or imprisoned not more than 20 years, or both."

19.    Title 18, United States Code, Section 1349 provides that any person who attempts or conspires to commit wire fraud shall be subject to the same penalties as those set forth in Title 18, United States Code, Section 1343.

### Theft of Government Funds

20.    Title 18, United States Code, Section 641 provides that "whoever embezzles, steals, purloins, or knowingly converts to his use or the use of another, or without authority, sells, conveys, or disposes of—

        a.    any record, voucher, money or thing of value of the United States or of any department or agency thereof, or

     b.  any property made or being made under contract for the United States or any

         department or agency thereof; or

Whoever receives, conceals, or retains the same with intent to convert it to his use or

gain, knowing it to have been embezzled, stolen, purloined, or converted — Shall be fined under

this title or imprisoned not more than ten years, or both."

     21.    Title 18, United States Code, Section 371 provides that it is a criminal offense

"[i]f two or more persons conspire either to commit any offense against the United States, or

to defraud the United States, or any agency thereof in any manner or for any purpose."

**Money Laundering**

     22.    Title 18, United States Code, Section 1956 provides that "whoever, knowing that

the property involved in a financial transaction represents the proceeds of some form of unlawful

activity, conducts or attempts to conduct such a financial transaction which in fact involves the

proceeds of specified unlawful activity—

     a.  With the intent to promote the carrying on of specified unlawful activity; or

     b.  With the intent to engage in conduct constituting a violation of section 7201 or

         7206 of the Internal Revenue Code of 1986; or

Knowing that the transaction is designed in whole or in part—

     a.  To conceal or disguise the nature, the location, the source, the ownership, or the

         control of the proceeds of specified unlawful activity; or

     b.  To avoid a transaction reporting requirement under State or Federal law,

shall be sentenced to a fine of not more than $500,000 or twice the value of the property

involved in the transaction, whichever is greater, or imprisonment for not more than twenty

years, or both."

## V. RELEVANT INDIVIDUALS AND ENTITIES

23.     The NELLA Foundation ("NELLA") was a Louisiana non-profit organization with its principal place of business at 5154 Faulkner Drive in Darrow, Louisiana. NELLA participated in the SFSP as a sponsoring institution in 2014 and 2015. NELLA maintained an operating account at Regions Bank ending in 9762.

24.     POWELL was a resident of Darrow, Louisiana. During all times relevant to the investigation described herein, POWELL owned, operated, and/or controlled NELLA. POWELL corresponded using the TARGET ACCOUNT.

25.     JANIE JOHNSON ("JOHNSON") is a resident of Monroe, Louisiana. Johnson was employed by POWELL to manage the day to day operations of NELLA's SFSP feeding sites. JOHNSON maintained a bank account ending in 5471 at Regions Bank.

26.     Sysco Food Services of Jackson, LLC ("Sysco-Jackson") is a Mississippi for-profit corporation with its principal place of business at 4400 Milwaukee Street in Jackson, Mississippi. In 2015, NELLA ordered food for its SFSP sites from Sysco-Jackson.

27.     Sysco Food Distributors, Inc. ("Sysco- Powell") was a Louisiana limited liability company with its principal place of business at 4888 Hooper Road in Baton Rouge, Louisiana. At all times relevant to the investigation described herein, POWELL owned, operated, and/or controlled Sysco- Powell. Sysco-Powell maintained an operating account at Regions Bank ending in 5140.

28.     Heaven Sent was a fictitious catering company that POWELL and JOHNSON claimed provided food for NELLA's SFSP operations. JOHNSON represented herself as President of Heaven Sent.

## VI. PROBABLE CAUSE TO BELIEVE THAT A CRIME HAS BEEN COMMITTED

29.     The instant investigation involves POWELL and JOHNSON's submission of fraudulent claims for reimbursement and theft of SFSP funds during the summer of 2015.

30.     The scheme, as outlined in more detail below, supplies probable cause to believe that one or more crimes may have been committed by POWELL, who used the TARGET ACCOUNT in doing so.

### Participation in the SFSP Program

31.     On May 28, 2014, POWELL executed a Permanent Agreement with the LDOE in order for NELLA to serve as an SFSP sponsoring organization.  As part of that agreement, POWELL certified that NELLA would operate a not-for-profit food service for children and that its program would comply with all applicable federal and state laws and regulations.

32.     In his application, POWELL indicated that electronic funds transfer payments for SFSP reimbursements should be directed to NELLA's operating account ending in 9762, held by Regions Bank and located at 916 South Burnside Avenue, Suite 100, Gonzales, LA.  POWELL also supplied the TARGET ACCOUNT as the email address that should be used for all of NELLA's official correspondence with LDOE.

33.     NELLA, located in and operating from the Middle District, sponsored feeding sites in North Louisiana.  From May-August, 2014, NELLA operated two feeding sites: one in Bastrop, LA and one in Winnsboro, LA  In 2015, POWELL expanded NELLA's SFSP operations to include a third site in Marion, Louisiana.

34.     During both program years, POWELL, as NELLA's President, executed contracts with LDOE, completed NELLA's sponsor and site applications, and was responsible for ensuring program compliance and the training all SFSP staff.  POWELL also submitted all of

NELLA's claims for reimbursement electronically, using LDOE's online database, and he maintained sole control of NELLA's operational account at Regions Bank.

35.     JOHNSON was employed by POWELL to manage the day-to-day operations of NELLA's feeding sites. Her duties included, among other things, managing SFSP employees and completing and/or approving meal count forms for the three feeding sites.

36.     NELLA purchased food for its SFSP operations through lines of credit with food distribution companies obtained by POWELL and JOHNSON.

37.     In 2014, POWELL secured a line of credit with Doerle Food Services ("Doerle"), a division of Sysco Food Distributors, which is located in Broussard, Louisiana. On his credit application with Doerle, POWELL requested that all billing be remitted to 5154 Faulkner Drive in Darrow, LA. Between approximately May-August, 2014, POWELL ordered food for NELLA's SFSP through this line of credit. As of December of 2015, POWELL's account with Doerle indicated an outstanding balance of approximately $11,875. Doerle filed suit against NELLA for breach of contract in Case No. 644634 of the 19th Judicial District Court in December 2015.

38.     In 2015, POWELL was unable to obtain another line of credit with Doerle due to his outstanding debt from the year prior. Therefore, JOHNSON obtained a line of credit with Sysco-Jackson in the name of her purported catering company, Heaven Sent. From approximately May-July, 2015, JOHNSON ordered food for NELLA's feeding sites through this line of credit. As of September 2016, NELLA's outstanding debt of approximately $84,000 remained unpaid.

39.     Between June 2014 and September 2015, POWELL submitted and was paid approximately $265,167.94 in claims for reimbursement from LDOE. The claims were

processed by LDOE in the Middle District, and the funds were transferred from the Louisiana

State Treasury to NELLA's operating account ending in 9762.

**Termination from the SFSP**

40.    In September of 2015, LDOE received an email from Greg Lovelady, Director of

Credit for Sysco-Jackson.  Lovelady explained that the company extended credit to Heaven Sent

for NELLA's SFSP, and that as of August 28, 2015, NELLA had only paid 20% of its

outstanding debt. According to Sysco-Jackson, JOHNSON provided an invalid tax id number for

Heaven Sent on her credit application, and there was no Heaven Sent registered as a valid

business entity.  Lovelady further stated that JOHNSON assured him that payment would be

made when NELLA received reimbursement from LDOE.  However, at the time the complaint

was received, LDOE had already transmitted electronic reimbursements to NELLA's operating

account, which were intended for payment of SFSP expenses.

41.    As a result of the complaint, LDOE conducted an audit of NELLA's SFSP

program.  In March of 2016, LDOE auditors met with POWELL, who provided copies of daily

and weekly meal count forms, bank statements, cancelled checks, employee timesheets, and

receipts for expenses.

42.    POWELL told auditors that NELLA contracted with Heaven Sent, a catering

company owned by JOHNSON, to supply catering services for its SFSP.  POWELL claimed

that he issued payments to JOHNSON/Heaven Sent to pay Sysco-Jackson.  To support his claim,

POWELL provided LDOE with copies of six (6) cancelled checks addressed to JOHNSON

and/or Heaven Sent which totaled approximately $85,000.

43.    Based on the findings of the audit, LDOE emailed a Notice of Serious Deficiency

to the TARGET ACCOUNT on April 14, 2016.  LDOE's letter noted multiple examples of

NELLA's financial and administrative mismanagement of SFSP funds, which included the unpaid invoices from Sysco-Jackson.  LDOE provided NELLA with the opportunity to submit a Corrective Action Plan in order to avoid termination from the SFSP.

44.    Four days later, POWELL emailed LDOE a written response using the TARGET ACCOUNT.  In addressing the outstanding debt with Sysco-Jackson, POWELL again claimed that NELLA had a verbal contract with JOHNSON's catering company, Heaven Sent, to provide food for the SFSP.  POWELL also insisted that NELLA had issued payments to Heaven Sent/JOHNSON.

45.    The LDOE reviewed POWELL's response and found his defenses without merit. Shortly thereafter, LDOE terminated NELLA as an SFSP sponsor.  In its letter of termination, LDOE listed the following reasons behind its decision:  (1) unpaid invoices/bills regarding the contract/agreement between Sysco-Jackson for SFSP operations; (2) payroll expenditures for individuals that were not approved SFSP staff; (3) undocumented expenditures and withdrawals from the SFSP account; and (4) reimbursement claims not supported by meal counts.

46.    NELLA's termination prompted an investigation by the Louisiana Office of the Inspector General ("LA-OIG"), the state agency tasked with investigating allegations of fraud and misuse of USDA funds.

47.    LA-OIG's Investigators obtained NELLA's SFSP documentation, including bank records, meal count forms, timesheets, receipts and other invoices for program expenses.

48.    The records, combined with site visits and multiple witness interviews, revealed that beginning around May 2015 through September 2015, that POWELL and JOHNSON obtained approximately $200,877.50 from the SFSP by engaging in numerous activities to

defraud, which included falsifying program documentation and filing claims for reimbursement of expenses that greatly inflated the number of meals and children served by the program.

49.    In order to execute the scheme, POWELL and JOHNSON submitted fraudulent claims for reimbursement via LDOE's online database, which were processed by servers located in the Middle District.   These fraudulent claims caused interstate wire communications to be transmitted from the Louisiana State Treasury to NELLA's operating account held by Regions Bank, which is located in Birmingham, Alabama.

50.    After receiving reimbursement from LDOE, rather than paying creditors as agreed, POWELL and JOHNSON defaulted on the lines of credit used for SFSP food orders. Further, POWELL and JOHNSON falsified timesheets and altered bank records to support payments made to themselves and others who facilitated the scheme.

51.    The investigation to date also indicated that POWELL, in an attempt to conceal his use of SFSP funds, transferred the money obtained from his illegal activity to other entities and accounts under his control.  POWELL then shared a portion of the funds with JOHNSON, and used the remainder to pay personal expenses such as rent payments, car notes, credit card payments, and other personal expenses unrelated to the SFSP.

**The Scheme**

52.    Between May and August, 2015, NELLA operated three feeding sites in Bastrop, Winnsboro, and Marion, Louisiana.  Throughout the summer, JOHNSON completed, or directed employees to complete, daily and weekly meal count forms documenting the number of children and/or meals served at each feeding site.

53.    In order to obtain a higher rate of reimbursement, POWELL and JOHNSON inflated the number of children/meals served at each of NELLA's three feeding sites.  The

completed meal count forms indicated that an average of between 250-300 children were served breakfast and lunch daily.

54.    During the investigation, I, along with LA-OIG Investigator Eric Kenny and others, interviewed multiple former employees, including at least one employee assigned to each feeding site. Based on their accounts, POWELL and JOHNSON falsified the meal count forms to reflect a greater number of children than were actually served.

55.    For example, meal count forms for NELLA's feeding site in Bastrop, Louisiana, indicated that between July and August 2015, an average of 263 children were fed breakfast each day, and an average of 298 children were served lunch each day. We interviewed former employee D.B., who was employed by NELLA as a cook and assigned to the Bastrop site. D.B. estimated that they served approximately 50-70 breakfasts/day, and approximately 120-150 lunches/day. D.B. stated that JOHNSON would often tell her to alter the numbers and "add 100 more" or "write down 200" in spite of the fact that those numbers were not true.

56.    We also interviewed P.C., an individual assigned as a site monitor at NELLA's feeding site in Winnsboro, Louisiana. P.C. stated that approximately 100 children were fed breakfast and approximately 180 children were served lunch, 7 days a week. However, the meal count forms submitted for the Winnsboro feeding site indicated an average of approximately 295 breakfasts and lunches served daily during the months of July and August, 2015. Many of the meal count forms indicated upwards of 300 served at one time.

57.    In addition to witness testimony, there are several other facts which support the inference that the claims submitted were fraudulent. First, NELLA's food orders were insufficient to provide for the number of children NELLA claimed to serve. Second, based on the sponsorship application submitted by POWELL and the corresponding timesheets

documenting site staff, the sites were insufficiently staffed to manage and serve the large number

of children claimed. Finally, in some instances, NELLA's claims contained higher numbers of

children than the physical locations of the feeding sites could actually accommodate.

58.    Based on these inflated numbers, POWELL submitted, via LDOE's online portal,

the following fraudulent claims for reimbursement of expenses, which were processed in the

Middle District, and that were subsequently paid via interstate wire transmission to NELLA's

operating account:

| Claim Period | Amount Requested | Transmission Number | Amount Paid | Transmission Date | AD/EF # | Date of Record | Type |
|---|---|---|---|---|---|---|---|
| May/Jun-15 | $34,083.97 | PV000287818 | $1,647.54 | 6/4/2015 | EF00000896395 | 6/5/2015 | Advance |
| | | PV000289482 | $32,436.43 | 7/27/2015 | EF00000908245 | 7/28/2015 | Pd. Claim |
| Jul-15 | $107,613.48 | PV000289266 | $13,712.49 | 7/16/2015 | EF00000905515 | 7/17/2015 | Advance |
| | | PV000290018 | $93,900.99 | 8/24/2015 | EF00000913512 | 8/25/2015 | Pd. Claim |
| Aug- 15 | $59,180.05 | PV000289555 | $4,825.98 | 8/6/2015 | EF00000910291 | 8/7/2015 | Advance |
| | | PV000290314 | $54,354.07 | 9/10/2015 | EF00000915944 | 9/11/2015 | Pd. Claim |
| | | | | | | | |
| Total | $200,877.50 | | $200,877.50 | | | | |

59.    Once the funds were deposited to NELLA's operating account, POWELL used

the funds to issue payments to himself, JOHNSON, and others, for work that was either not

completed or that was not completed as documented.

60.    For example, POWELL provided LDOE with timesheets indicating that between

May-August, 2015, he worked, on average, 48 hours a week, at times 7 days a week, for 15

weeks. JOHNSON's timesheets also indicated that she worked 41 hours a week, often 7 days a

week, during the same period. The employees interviewed, however, stated that JOHNSON was

not at the feedings sites daily, or even weekly. JOHNSON only visited the sites at most once a

week to pick up meal count forms. Further, none of the employees interviewed had ever met

POWELL or seen him at the feeding sites.

61.    There is also evidence that NELLA directed its employees to falsify timesheets. For example, employee P.C.'s timesheets indicated she worked full-time during the summer of 2015. However, we obtained records from P.C.'s second employer which also indicated P.C. worked full time on the same dates and times that overlapped her time with NELLA. When confronted with this information, P.C. stated that JOHNSON instructed her to put the same times each week, regardless of whether or not she was present.

62.    In January 2019, Investigators obtained records of NELLA's operational account from Regions Bank. According to the records, POWELL issued himself approximately $135,720.23 in checks, cash withdrawals, and transfers to other accounts under his control. JOHNSON also received another $25,260 in checks written on the account, and an additional $11,500 directly from POWELL.

63.    The investigation has also uncovered evidence that POWELL specifically moved $84,000 of SFSP funds into other accounts under his control and that he took steps to conceal his use of the funds from LDOE.

64.    On August 25, 2015, LDOE transmitted a reimbursement to NELLA's operating account in the amount of $93,900.99.

65.    Shortly thereafter, on August 27, 2015, POWELL issued a check to "Sysco" for $20,000. The check was deposited in an account maintained by Sysco-Jackson at Zions First National Bank in Utah.

66.    As of September of 2015, NELLA owed an outstanding balance of $87, 974.98 to Sysco-Jackson for food ordered through JOHNSON's line of credit.

67.    In reviewing NELLA's account, Investigators identified six checks, totaling $84,073.28, which were addressed to "Sysco" and endorsed with "FDO#0199025140." These

checks, unlike NELLA's prior check to Sysco-Jackson, were deposited into Regions Bank Account #0199025140.

68.    Investigators issued subpoenas for Regions Bank Account #0199025140. The records identified that the bank account was held by "Sysco Food Distributors." POWELL was the sole signatory on the account.

69.    Records obtained from the Louisiana Secretary of State indicated that on September 9, 2015, POWELL registered a limited liability company in the name of Sysco Food Distributors ("Sysco-Powell").

70.    On September 11, 2015, NELLA received another transmission from LDOE in the amount of $54,354.07. That same day, POWELL opened Regions Bank Account #0199025140 in the name of "Sysco." The account was opened at branch #07419, located on Plank Road in Baton Rouge.

71.    Beginning on September 11, 2015, through January 15, 2016, POWELL wrote the following checks to "Sysco," on NELLA's operational account and deposited those checks into Sysco-Powell's Regions Bank Account #0199025140:

| Check # | Post Date | Source | Payee | Amount Out |
|---------|-----------|--------|-------|------------|
| 3013 | 9/11/2015 | NELLA | Sysco | $15,000 |
| 3014 | 9/14/2015 | NELLA | Sysco | $10,000 |
| 2001 | 9/24/2015 | NELLA | Sysco | $44,673.28 |
| 1400 | 12/8/2015 | NELLA | Sysco | $5,000 |
| 1404 | 12/22/2015 | NELLA | Sysco | $5,600 |
| 1405 | 1/15/2016 | NELLA | Sysco | $3,800 |
|  |  |  | TOTAL | $84,073.28 |

72.    The check images of these deposits were compared to the check images of purported payments to Heaven Sent that POWELL provided to LDOE during its audit. The check numbers, account numbers, dates, and amounts were an exact match. POWELL altered

the name on the check images to support his claim that NELLA paid Heaven Sent for catering

services and to conceal the fact that the funds had been deposited into his own bank account.

73.     A sample of one (1) of the six (6) altered check images is provided below:

**Copy of Check No. 2001 provided by POWELL to LDOE:**



**Copy of Check No. 2001 provided by Regions Bank:**

Posting Date: 2015-09-24, Debit/Credt: D, Amt: 44,673.28, Posting Acct: 174799762 - side 1



Posting Date: 2015-09-24, Debit/Credt: D, Amt: 44,673.28, Posting Acct: 174799762 - side 2



74.     The investigation has yet to identify a bank account held in the name of Heaven

Sent.

75.     An analysis of Sysco-Powell's Regions Bank Account #0199025140, indicated

that the majority of the SFSP funds were withdrawn from the account as cash, transferred to

POWELL's other financial accounts, or were used to by POWELL to pay personal expenses.

76.     For example, POWELL, using branches located in the Middle District, deposited

checks written on NELLA's account into the Sysco-Powell account.  Shortly thereafter,

POWELL withdrew a portion of the funds from the Sysco-Powell account, and subsequently

deposited those funds into Regions Bank Account #022895571, held by JOHNSON.  After the

deposits were available in JOHNSON's account, JOHNSON, using a Regions branch in Monroe,

withdrew the funds as cash.  These types of financial transactions between POWELL and

JOHNSON continued through December of 2015.

77.     In another example, on September 25, 2015, POWELL issued a check to JOHNSON from the Sysco-Powell account for $11,500. The memo on the check read "Heaven Sent food invoice," and it was endorsed with "FDO 022895571." When Investigators asked JOHNSON about this check, JOHNSON said that POWELL issued the check as a "bonus."

78.     In short, of the $200,877.50 reimbursed to NELLA for its SFSP in 2015, approximately $130,170.55 went directly to POWELL and/or JOHNSON and was used for the payment of personal expenses. The remaining $70,706.95 was issued to individuals, some of whom did not work in the program, and other undocumented SFSP expenditures. Only a small portion was being used on legitimate SFSP expenses.

79.     Based on the foregoing, there is probable cause to believe that POWELL and JOHNSON falsified reimbursement claims in order to obtain funds from the SFSP to which they were not entitled, and used those funds for their own personal enrichment. Further, there is probable cause to believe that POWELL engaged in numerous financial transactions in an attempt to conceal his misappropriation of SFSP funds.

## VII.     PROBABLE CAUSE TO SEARCH THE TARGET ACCOUNT

80.     As outlined below, there is probable cause to believe that POWELL used the TARGET ACCOUNT in his communications with LDOE, NELLA's SFSP creditors, and others, in furtherance of the scheme to defraud.

81.     On the LDOE's Permanent Agreement with NELLA, POWELL listed the TARGET ACCOUNT as the email address the organization intended to use to receive all official correspondence with LDOE. The agreement also provided that POWELL's username and password to access the SFSP database would be sent to the TARGET ACCOUNT.

82.    POWELL created an account on LDOE's website using the TARGET ACCOUNT.  Through this account, POWELL submitted NELLA's SFSP application forms and fraudulent claims for reimbursement.

83.    In the course of this investigation, agents met with representatives of LDOE regarding NELLA's SFSP participation.  Shanna Legier, who manages the SFSP program for LDOE, confirmed that she was in frequent contact with POWELL during NELLA's participation in the program. Legier stated that she primarily communicated with POWELL via email at the TARGET ACCOUNT.

84.    In support of this assertion, Legier provided agents with copies of her communications with POWELL.  She stated that POWELL sent her multiple emails regarding his requests for advances and his claims for reimbursement.

85.    LDOE provided copies of emails exchanged between its employees and POWELL.  The emails show POWELL's active involvement in NELLA's SFSP, and his repeated requests for reimbursements.  Some examples include the following emails, all sent by POWELL from the TARGET ACCOUNT:

- On Friday, May 22, 2015, POWELL emailed Legier:  *"Wanted to let you know that we would like to start at the Bastrop location on Tues. Everything should be submitted to u today.  Wanted to let u know so maybe u will have time to work on it to get it approved and maybe work up the advance amount."*

- On Thursday, May 28, 2015, POWELL emailed Legier:  *"Hi Ms Shanna.  Can u tell me abt how much our advance would be for NELLA?"* That same day, Legier responded that the advance amount would only be about $1,647.54.  POWELL responded by asking about when the next reimbursements would be dispersed.

- On June 1, 2015, POWELL emailed Carol Troxler, LDOE's Accountant, inquiring about an advance payment: *"Í [sic] Corey Powell with the NELLA Foundation.  Can you tell me when the wire for our organization will possible come through for our initial advance for this year for the Summer Feeding program?"*

- On July 20, 2015, POWELL emailed Legier asking that LDOE expedite NELLA's June claims so that POWELL could pay a food vendor: *"I wanted to email you to tell you that we just submitted out June claims and to see if you could push it through because our food vendor won't allow us to order until we pay our invoices."*

- On June 29, August 11, 12, and 26, 2015,  POWELL emailed Troxler inquiring about NELLA's payments.  In his email dated August 11, 2015, from the TARGET ACCOUNT, POWELL stated: *"I wanted to see if you could somehow expedite the request because we have some people that we have to get paid. And can you tell me the amount."*

86.    POWELL also listed the TARGET ACCOUNT on his credit application with

Doerle, and he corresponded with vendors, such as Doerle, regarding his accounts.

- In an email dated December 3, 2014, POWELL sent the following email to Georgette Romero, Doerle's Credit Manager:  *"Georgette, i would like to see if Doerle will give us til at least close to time of Summer feeding to pay the balance you all say we still owe. After we were told the accts were paid in full, we pay other payables and dont hve the money to pay that amount you all say we have left. I have monies from something else that will pick up starting the end of next month and should be able to pay large amounts to get the invoice down. Please advise on this and please dont send the file to the DA."*

- Romero made numerous attempts to collect the debt through January 2015.  She corresponded with POWELL via emails to the TARGET ACCOUNT.

87.    Further, the TARGET ACCOUNT was used by POWELL in his account

documentation with Regions Bank, and on NELLA's official records with the Louisiana

Secretary of State.  On August 23, 2012, July 22, 2015, and September 9, 2015, POWELL filed

NELLA'S Annual Reports with the Louisiana Secretary of State.  The reports were filed

electronically, and POWELL listed the TARGET ACCOUNT as his email address on each

document.

88.    Finally, POWELL used the target account to communicate with LA-OIG

Investigators regarding NELLA's SFSP program. Following an interview with agents, POWELL

sent Inv. Kenny a series of emails using the TARGET ACCOUNT.

89.     On January 22, 2019, POWELL used the TARGET ACCOUNT to email

Investigator Kenny approximately 8 pages of invoices from U.S. Foods.  In the email, POWELL

wrote:

- *"Eric, see attached, There has been a dispute with the invoices with food vendors.*
  *Food prices given were not given as agreed. Also there is a dispute with Sysco and*
  *sales rep for them. Janie have some cash payment to rep and was never credited for*
  *it. This is all I could find. I will attempt to find the Doerle invoice that NELLA had to*
  *pay for that was invoiced to healthy Communities but was for NELLA"*

90.     Based on the foregoing, there is probable cause to believe that POWELL used the

TARGET ACCOUNT in furtherance of the scheme to defraud, as outlined in detail herein.

## VIII.    BACKGROUND CONCERNING EMAIL

91.     Based on my training and experience, I have learned that Google, Inc. provides a

variety of online services, including electronic mail ("email") access, to the public.  Google

manages Gmail email accounts, such as the email account listed in Attachment A.  Subscribers

must provide basic personal information to obtain an email account.  Therefore, the computers of

Google are likely to contain stored electronic communications (including retrieved and

unretrieved email for Gmail subscribers) and their use of email services, such as account access

information, email transaction information, and account application information.  In my training

and experience, such information may constitute evidence of the crimes under investigation

because the information can be used to identify the account's user or users.

92.     In my training and experience, email providers typically retain certain

transactional information about the creation and use of each account on their systems.  This

information can include the date on which the account was created, the length of service, records

of log-in (*i.e.*, session) times and durations, the types of service utilized, the status of the account

(including whether the account is inactive or closed), the methods used to connect to the account

(such as logging into the account via the provider's website), and other log files that reflect usage

of the account. In addition, email providers often have records of the Internet Protocol address

("IP address") used to register the account and the IP addresses associated with particular logins

to the account. Because every device that connects to the Internet must use an IP address, IP

address information can help to identify which computers or other devices were used to access

the email account.

     93.    In my training and experience, in some cases, email account users will

communicate directly with an email service provider about issues relating to the account, such as

technical problems, billing inquiries, or complaints from other users. Email providers typically

retain records about such communications, including records of contacts between the user and

the provider's support services, as well as records of any actions taken by the provider or user as

a result of the communications. In my training and experience, such information may constitute

evidence of the crimes under investigation because the information can be used to identify the

account's user or users.

     94.    As explained herein, information stored in connection with an email account may

provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct

under investigation, thus enabling the United States to establish and prove each element or

alternatively, to exclude the innocent from further suspicion. In my training and experience, the

information stored in connection with an email account can indicate who has used or controlled

the account. This "user attribution" evidence is analogous to the search for "indicia of

occupancy" while executing a search warrant at a residence. For example, email

communications, contacts lists, and images sent (and the data associated with the foregoing, such

as date and time) may indicate who used or controlled the account at a relevant time. Further,

information maintained by the email provider can show how and when the account was accessed

or used. For example, as described below, email providers typically log the Internet Protocol

(IP) addresses from which users access the email account, along with the time and date of that

access. By determining the physical location associated with the logged IP addresses,

investigators can understand the chronological and geographic context of the email account

access and use relating to the crime under investigation. This geographic and timeline

information may tend to either inculpate or exculpate the account owner. Additionally,

information stored at the user's account may further indicate the geographic location of the

account user at a particular time (*e.g.*, location information integrated into an image or video sent

via email). Last, stored electronic data may provide relevant insight into the email account

owner's state of mind as it relates to the offense under investigation. For example, information in

the email account may indicate the owner's motive and intent to commit a crime (*e.g.*,

communications relating to the crime), or consciousness of guilt (*e.g.*, deleting communications

in an effort to conceal them from law enforcement).

## IX.    **RETENTION OF INFORMATION FOR AUTHENTICATION PURPOSES**

95.    In anticipation of litigation relating to the authenticity of data seized pursuant to

the search warrant, the government requests that it be allowed to retain a digital copy of all

seized information authorized by the warrants for as long as is necessary for authentication

purposes.

## X.    **CONCLUSION**

96.    Based on the forgoing, there is probable cause to believe that from in or around

May 2014 and continuing to May 2016, POWELL and others committed the TARGET

OFFENSES, and POWELL used the TARGET ACCOUNT in furtherance thereof. There is also

probable cause to search the information described in Attachment A for evidence, instrumentalities, and fruits of these crimes, further described in Attachment B.

97.    Because the warrant will be served on Google, who will then compile the requested records at a time convenient to it, there exists reasonable cause to permit the execution of the requested warrant at any time in the day or night.  Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant.

Respectfully submitted,

Kaitlan Carey
Special Agent
Federal Bureau of Investigation

Affidavit submitted by email/.pdf and attested to me as true and accurate by telephone consistent with Federal Rules of Criminal Procedure 4.1 and 41(d)(3) on the 27th day of May, 2020.

HONORABLE SCOTT D. JOHNSON
UNITED STATES MAGISTRATE JUDGE
MIDDLE DISTRICT OF LOUISIANA

## ATTACHMENT A

**Property to Be Searched**

      This warrant applies to information associated with the TARGET ACCOUNT identified as "coreypowell78@gmail.com" which is stored at premises owned, maintained, controlled, or operated by Google, Inc., an email provider that is headquartered at 1600 Amphitheatre Parkway, in Mountain View, California.

**Attachment B**

**Particular Things to be Seized**

**I.      Information to be Disclosed By Google, Inc. (the "Provider")**

To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, including any records that have been deleted but are still available to the Provider, the Provider is required to disclose the following information to the government corresponding to the TARGET ACCOUNT listed in Attachment A:

a.      The contents of all emails associated with the account from May 2014 to May 2016 including stored or preserved copies of emails sent to and from the account, draft emails, the source and destination addresses associated with each email, the date and time at which each email was sent, and the size and length of each email;

b.      All records or other information regarding the identification of the account, to include full name, physical address, telephone numbers and other identifiers, records of session times and durations, the date on which the account was created, the length of service, the IP address used to register the account, log-in IP addresses associated with session times and dates, account status, alternative email addresses provided during registration, methods of connecting, log files, and means and source of payment (including any credit or bank account number);

c.      The types of service utilized;

d.      All records or other information stored by an individual using the account, including address books, contact and buddy lists, calendar data, pictures, and files; and

e.      All records pertaining to communications between the Provider and any person regarding the account, including contacts with support services and records of actions taken.

Provider is hereby ordered to disclose the above information to the government within 14 days of service of this warrant.

## II.    Information to Be Seized by the Government

The information described above in Section I that constitutes evidence, fruits, and instrumentalities of violations of Title 18, United States Code, Section 1343 (Wire Fraud), Title 18, United States Code, Section 1349 (Conspiracy to Commit Wire Fraud), Title 18, United States Code, Section 642 (Theft of Government Funds), and Title 18, United States Code, Section 1956 (Money Laundering) (collectively, "TARGET OFFENSES"),  those violations involving COREY POWELL from May 2014 to May 2016, including, for the TARGET ACCOUNT listed in Attachment A, information pertaining to the following matters:

   a.       Organizational records, documents and filings related to The NELLA Foundation ("NELLA") or Sysco Food Distributors ("Sysco- Powell");

   b.       Records relating to NELLA's participation in the SFSP, including claims submitted, meal count forms, agreements or contracts with LDOE, agreements or contracts with SFSP vendors for supplies or food, correspondence with employees or others regarding the SFSP;

   c.       Contracts, billing agreements, professional service agreements, or any other companies or individuals involved in the provision of SFSP services or supplies;

   d.       Bills, invoices, claims for payment and supporting documentation evidencing monies owed to individuals or entities involved in NELLA's SFSP;

   e.       Communications regarding obtaining or using SFSP funds;

   f.       Communications about the provision of services at NELLA's SFSP sites;

   g.       Communications about the SFSP or LDOE's rules and regulations, complaints,

internal investigations, internal or external audits and investigations, compliance, and internal policies and procedures;

h.      Communications with LDOE or its contractors;

i.      Communications about food or supply orders;

j.      USDA or LDOE training materials, newsletters or publications;

k.      Communications about marketing, recruiting, and sales techniques;

l.      Communications about enrollment or the provision of SFSP services;

m.      Communications with any financial institution regarding the deposit, transfer, or withdrawal of SFSP funds;

n.      Communications with any financial institution regarding any accounts held by POWELL, NELLA, or Sysco-Powell;

o.      Corporate, business and personal tax returns, including, without limitation, any quarterly employment tax returns, withholding records, W-2s, and any Internal Revenue Service Forms 1099.;

p.      Documents consisting of, concerning or relating to current and former employees, including, without limitation, personnel files, employee rosters, names, addresses, telephone numbers, email addresses, time cards or similar records, expense reports, training information, certification verification, salary and compensation information, disciplinary records, licensure records, job applications, job descriptions, employment agreements and W-2 forms;

q.      Receipt, transfer, or other disposition of proceeds; and

r.      Information relating to who created, used or communicated with the account regarding the offenses listed above, including records about their identities and whereabouts.

AO 93  (Rev. 11/13) Search and Seizure Warrant

# UNITED STATES DISTRICT COURT

for the

Middle District of Louisiana

| | | |
|---|---|---|
| In the Matter of the Search of | ) | |
| *(Briefly describe the property to be searched* | ) | |
| *or identify the person by name and address)* | ) | Case No.    20- mj-29 |
| | ) | |
| Information Associated with the Account | ) | |
| "coreypowell78@gmail.com" that Is Stored at Premises | ) | |
| Controlled by Google, Inc. | ) | |

## SEARCH AND SEIZURE WARRANT

To:      Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the _____ Northern _____ District of _____ California _____
*(identify the person or describe the property to be searched and give its location)*:

The account identified by "coreypowell78@gmail.com" which is stored at premises owned, maintained, controlled, or operated by Google, Inc., as further described in Attachment A

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment B

**YOU ARE COMMANDED** to execute this warrant on or before ___ June 9, 2020 ___ *(not to exceed 14 days)*

☒ in the daytime 6:00 a.m. to 10:00 p.m.     ☐ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to _____ Honorable Scott D. Johnson _____ .
*(United States Magistrate Judge)*

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*

☐ for _____ days *(not to exceed 30)*     ☐ until, the facts justifying, the later specific date of _____ .

Date and time issued:     ___ May 27, 2020 at 3:34 PM ___          _____
                                                                                                                       *Judge's signature*

City and state:     ___ Baton Rouge, Louisiana ___          Hon. Scott D. Johnson, U.S. Magistrate Judge
                                                                                                                 *Printed name and title*

AO 93  (Rev. 11/13) Search and Seizure Warrant (Page 2)

| Return | | |
|---|---|---|
| Case No.:<br>  20- mj-29 | Date and time warrant executed: | Copy of warrant and inventory left with: |
| Inventory made in the presence of : | | |
| Inventory of the property taken and name of any person(s) seized: | | |

| Certification |
|---|
|  |

       I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.


Date: _____

 

_____
*Executing officer's signature*

_____
*Printed name and title*

## ATTACHMENT A

**Property to Be Searched**

This warrant applies to information associated with the TARGET ACCOUNT identified as "coreypowell78@gmail.com" which is stored at premises owned, maintained, controlled, or operated by Google, Inc., an email provider that is headquartered at 1600 Amphitheatre Parkway, in Mountain View, California.

## Attachment B

**Particular Things to be Seized**

**I.      Information to be Disclosed By Google, Inc. (the "Provider")**

To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, including any records that have been deleted but are still available to the Provider, the Provider is required to disclose the following information to the government corresponding to the TARGET ACCOUNT listed in Attachment A:

a.      The contents of all emails associated with the account from May 2014 to May 2016 including stored or preserved copies of emails sent to and from the account, draft emails, the source and destination addresses associated with each email, the date and time at which each email was sent, and the size and length of each email;

b.      All records or other information regarding the identification of the account, to include full name, physical address, telephone numbers and other identifiers, records of session times and durations, the date on which the account was created, the length of service, the IP address used to register the account, log-in IP addresses associated with session times and dates, account status, alternative email addresses provided during registration, methods of connecting, log files, and means and source of payment (including any credit or bank account number);

c.      The types of service utilized;

d.      All records or other information stored by an individual using the account, including address books, contact and buddy lists, calendar data, pictures, and files; and

e.      All records pertaining to communications between the Provider and any person regarding the account, including contacts with support services and records of actions taken.

Provider is hereby ordered to disclose the above information to the government within 14 days of service of this warrant.

## II.     Information to Be Seized by the Government

The information described above in Section I that constitutes evidence, fruits, and instrumentalities of violations of Title 18, United States Code, Section 1343 (Wire Fraud), Title 18, United States Code, Section 1349 (Conspiracy to Commit Wire Fraud), Title 18, United States Code, Section 642 (Theft of Government Funds), and Title 18, United States Code, Section 1956 (Money Laundering) (collectively, "TARGET OFFENSES"),  those violations involving COREY POWELL from May 2014 to May 2016, including, for the TARGET ACCOUNT listed in Attachment A, information pertaining to the following matters:

a.       Organizational records, documents and filings related to The NELLA Foundation ("NELLA") or Sysco Food Distributors ("Sysco- Powell");

b.       Records relating to NELLA's participation in the SFSP, including claims submitted, meal count forms, agreements or contracts with LDOE, agreements or contracts with SFSP vendors for supplies or food, correspondence with employees or others regarding the SFSP;

c.       Contracts, billing agreements, professional service agreements, or any other companies or individuals involved in the provision of SFSP services or supplies;

d.       Bills, invoices, claims for payment and supporting documentation evidencing monies owed to individuals or entities involved in NELLA's SFSP;

e.       Communications regarding obtaining or using SFSP funds;

f.       Communications about the provision of services at NELLA's SFSP sites;

g.       Communications about the SFSP or LDOE's rules and regulations, complaints,

internal investigations, internal or external audits and investigations, compliance, and internal policies and procedures;

h.    Communications with LDOE or its contractors;

i.    Communications about food or supply orders;

j.    USDA or LDOE training materials, newsletters or publications;

k.    Communications about marketing, recruiting, and sales techniques;

l.    Communications about enrollment or the provision of SFSP services;

m.    Communications with any financial institution regarding the deposit, transfer, or withdrawal of SFSP funds;

n.    Communications with any financial institution regarding any accounts held by POWELL, NELLA, or Sysco-Powell;

o.    Corporate, business and personal tax returns, including, without limitation, any quarterly employment tax returns, withholding records, W-2s, and any Internal Revenue Service Forms 1099.;

p.    Documents consisting of, concerning or relating to current and former employees, including, without limitation, personnel files, employee rosters, names, addresses, telephone numbers, email addresses, time cards or similar records, expense reports, training information, certification verification, salary and compensation information, disciplinary records, licensure records, job applications, job descriptions, employment agreements and W-2 forms;

q.    Receipt, transfer, or other disposition of proceeds; and

r.    Information relating to who created, used or communicated with the account regarding the offenses listed above, including records about their identities and whereabouts.